## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

JOLT INITIATIVE, INC.,

       *Plaintiff,*

  v.

KEN PAXTON, in his official capacity as
Attorney General of Texas,

       *Defendant.*

Case No.: _____

## COMPLAINT

1.    This case is brought to halt a campaign of unconstitutional intimidation targeting Plaintiff Jolt Initiative, Inc. (Jolt), a nonprofit organization that works to increase the civic participation of young Latinos in Texas, for exercising its freedom of speech and association.

2.    Through an intrusive and groundless document demand known as a Request to Examine (RTE), made without judicial process or probable cause, Defendant Attorney General Ken Paxton has demanded that Jolt disclose confidential information, including the identities of its volunteers and other associates. Defendant contends that failure to provide him with this information by September 19, 2024, could lead to the termination of Jolt's registration and ability to carry out business in the State of Texas.

1

3.      Providing the information that Defendant seeks would expose Jolt, its Volunteer Deputy Registrars (VDRs), and the Texas voters with whom they engage, among other associates, to further intimidation and threats, and would chill their exercise of fundamental expressive freedoms.

4.      Defendant's demand also constitutes impermissible intimidation under § 11(b) of the Voting Rights Act, which protects Plaintiff's right to "urg[e] or aid[] any person to vote or attempt to vote."  52 U.S.C. § 10307(b).

5.      Plaintiff therefore asks the Court to protect its First Amendment freedoms of speech and association, its Fourth Amendment right to be free from unreasonable searches, and its rights under the VRA.

## JURISDICTION AND VENUE

6.      Plaintiff's claims are brought under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, and under 52 U.S.C. § 10307(b).

7.      This Court has jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 52 U.S.C. § 10308(f).  The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

8.      Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts that gave rise to this lawsuit have occurred or will occur in this judicial district.  This

District is also an appropriate venue under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## PARTIES

9.      Jolt Initiative, Inc., is a nonprofit organization that is incorporated in Texas and exempt from taxes under § 501(c)(3) of the Internal Revenue Code.  Jolt engages in a wide range of expressive and associative acts encouraging Texans to vote.

10.     Defendant Ken Paxton is the Attorney General of the State of Texas.

## FACTS

### A. Jolt Initiative

11.     Jolt Initiative, and its sister organization Jolt Action, Inc., were founded to increase the civic participation of Latinos in Texas in order to build a stronger democracy and ensure that everyone's voice is heard.  Jolt Initiative and Jolt Action are separate organizations, with distinct boards of directors and separate bank accounts.

12.     Jolt recognizes that young Latinos are the future of Texas, and it is focused on mobilizing young Latino voters (those aged 18 to 32) in particular.

13.     In addition to voter registration drives, Jolt uses public education campaigns, leadership programming, and other measures to encourage eligible Latinos to vote.

14.     Jolt and Jolt Action also speak out on matters of importance to Latinos in Texas, and Jolt Action is often critical of government institutions and politicians,

3

including the Attorney General.  For example, Jolt Action has criticized the spread of false information about immigrants and attempts to persecute members of the Latino LGBTQ community.

### B. Voter Registration Drives

15.    A key part of Jolt's effort is registering eligible Texans to vote.  Jolt strives to encourage as many eligible Latinos in Texas to vote as possible.

16.    Jolt conducts voter registration drives at various locations throughout the state.  Because of Jolt's efforts, several thousand Texans have been added to the voter rolls just this year.

17.    Further, Jolt builds the capacity of young Latinos to increase their civic engagement by training community members to conduct nonpartisan voter registration in accordance with state law.

18.    To carry out its voter registration drives, Jolt uses and trains Volunteer Deputy Registrars (VDRs).

19.    VDRs are individuals who are appointed by county registrars and are "empowered to receive and deliver completed voter registration applications." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 385 (5th Cir. 2013).

20.    Texas created VDRs "[t]o encourage voter registration." Tex. Elec. Code § 13.031(a); *see* Brief of Former Governor Mark White et al. as Amicus Curiae in Support of Appellee at 14–15, *Voting for America*, 732 F.3d 382, 2012 WL 5996185 ("The intent of the voter registration system was to open the doors as wide as possible

4

to every single, eligible qualified voter and not exclude anybody under any circumstance." (internal quotation marks and alteration omitted)).

21.     Any person who is 18 years old and eligible to vote in Texas—and not disqualified by virtue of certain criminal convictions—is entitled to become a VDR upon applying to do so in each county in which they wish to register voters.  Tex. Elec. Code §§ 13.031(d), 13.032.  Each VDR receives a Certificate of Appointment that contains the VDR's voter registration number and residential address.  *Id.* § 13.033.

22.     VDRs may provide blank voter registration forms to potential voters and must deliver completed forms to the county registrar within five days.  *See* Tex. Elec. Code § 13.042.  VDRs review the information on registration forms for completeness, but they have no power to determine whether an applicant is actually eligible to vote. Tex. Elec. Code § 13.039; *Volunteer Deputy Registrars*, Tex. Sec'y State, https://perma.cc/38F6-CED5?type=image.  A VDR is legally required to submit every completed voter registration form to the county registrar within five days.  Tex. Elec. Code §§ 13.042, 13.043.  The county registrar then makes the determination whether the applicant is eligible to be added to the voter rolls.  *Id.* § 13.072.

23.     Upon receipt of a completed application, the VDR provides the applicant with a receipt.  State law provides that a duplicate of the receipt should be provided to the registrar, along with the applicant's voter registration form, unless an alternative system is prescribed.  Tex. Elec. Code § 13.040.

24.     Jolt VDRs are always properly appointed in the county in which they

5

register voters.

25.     A typical Jolt voter registration drive involves a Jolt VDR being located in a place with high foot traffic.  The VDR typically will have written materials about voting and registering to vote, as well as blank registration forms.  If a person wants to register to vote, a VDR will explain the eligibility requirements, answer any questions, and walk the person through the process of filling out a voter registration form.

26.     Jolt also has a presence on college campuses, working to register college students.  Jolt's on-campus student chapters are led by student coordinators who register as VDRs so that they can help their classmates register to vote.

27.     Jolt VDRs comply with all applicable laws.  Jolt undertakes rigorous training, supervision, and quality control protocols to ensure compliance with Texas's VDR scheme and to minimize error.

### C. Defendant's Baseless Investigation into Voter Registration Groups

28.     On August 18, 2024, a television personality with a history of promoting conspiracy theories posted on X that people who were ineligible to vote were being registered at locations in and around Fort Worth.  *See* Maria Bartiromo (@MariaBartiromo), X (Aug. 18, 2024, 9:56 AM), https://perma.cc/B7MD-PRKC; *see* Berenice Garcia, *A Fox News Host's Debunked Election Conspiracy Appears to Have Prompted a State Investigation*, Tex. Trib. (Aug. 26, 2024), https://perma.cc/9PM6-H9YS.

29.     Both the Parker County Republican chair and election administrator said there was no evidence to support the charge.  *See* Garcia, *supra*; Brady Gray (@Brady_Gray), X (Aug. 19, 2024, 10:12 PM), https://x.com/Brady_Gray/status/1825717561054376102.

30.     Two days later, a self-described "citizen journalist" and "Alpha MAGA Male" posted a video on X in which he purported to confront a Jolt VDR outside of a Texas Department of Public Safety office.  *See* hernando arce (@hernandoarce), X (Aug. 20, 2024, 1:53 PM), https://x.com/hernandoarce/status/1825954284858417608. The post said, "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio," and it tagged @KenPaxtonTx, among others.  *Id.*

31.     The video depicts no illegal activity or evidence of wrongdoing.

32.     After the video was posted, people on social media made violent and threatening posts about Jolt and its VDRs.

33.     For example, in a reply to the video depicting a Jolt VDR, one X user posted: "TARGET PRACTICE."  Coonass69 (@coonass70), X (Aug. 22, 2024, 8:16 AM), https://perma.cc/6ELX-5DY7.



34.     In response to a post from an activist saying he is "continu[ing] my hunt for Marxist Anti American organizations like @JoltAction," an X user replied: I too want to go hunting these scum."  Mr. Super Angry (@1AlphaOmega66), X (Sept. 5, 2024, 9:08 AM), https://perma.cc/2F9L-2XR6.  Another person replied to post the name and LinkedIn profile of a Jolt Action board member.  *See* Robert Johnson (@jdata17), X (Sept. 4, 2024, 9:48 PM), https://perma.cc/4DDH-X5R3.



35.     On August 20, 2024, the Attorney General's office executed a series of raids on the homes of people associated with the League of United Latin American Citizens (LULAC), another Latino-focused organization that encourages eligible Texans to register to vote.  *See* Fin Gómez & Nidia Cavazos, *Texas Attorney General Ken Paxton Raids Latino Democrats' Homes, Including Those of LULAC Members*, CBS News (Aug. 27, 2024), https://perma.cc/M7BL-W4Y7; Roman Palomares, *LULAC*

*Fights Back: How We're Standing up to Texas's Voter Suppression*,

https://lulac.org/texas_raids/ ("Paxton has been aggressively targeting and harassing

Latino-led organizations, . . . as well as individual citizens.").

36.     One of the people targeted was Lidia Martinez, an 87-year-old retired

educator in San Antonio who is a member of LULAC.  *See* Edgar Sandoval, *Latino

Civil Rights Group Demands Inquiry Into Texas Voter Fraud Raids*, N.Y. Times (Aug.

25, 2024), https://www.nytimes.com/2024/08/25/us/texas-latinos-democrats-raids-

paxton.html.  Armed agents swept through her house before 6 a.m., rifling through

her clothes, seizing her electronics, and questioning her for three hours.  *Id.* The

event "scared' Martinez, who "still felt shaken" days later. *Id.*

37.     The following day, Defendant put out a press release announcing that he

had "opened an investigation into reports that organizations operating in Texas may

be unlawfully registering noncitizens to vote in violation of state and federal law."

Press Release, Tex. Office of Att'y Gen., *Attorney General Ken Paxton Launches

Investigation into Reports That Organizations May Be Illegally Registering

Noncitizens to Vote* (Aug. 21, 2024), https://perma.cc/EF4H-E6PP.  The press release

cites the existence of voter registration efforts taking place outside Texas Department

of Public Safety offices, speculating that "there is no obvious need to assist citizens to

register to vote outside DPS offices," and "calling into question the motives of the

nonprofit groups."  *Id.*  The press release promises that "[a]ny wrongdoing will be

punished to the fullest extent of the law."  *Id.*

9

38.     The Attorney General's actions triggered additional violent commentary on social media, with people publicly calling for the execution of those involved with the nonprofits being investigated.  For example, on Patriots.Win, a user demanded that people "[s]tart hanging NGO agents as traitors and enemies of the state" in response to a post about Defendant investigating organizations doing voter registration drives.  *See* @POTUS_DonnieJ, Patriots.Win (Aug 21, 2024, 6:04 PM), https://patriots.win/p/17txtLGjt0/-texas-attorney-general-ken-paxt/c/4ZDtR7R5dVn.



In response to a similar post, another user called for "a public hanging in the public square."  @sixfingerdildo, Patriots.Win (Aug. 21, 2024, 9:11 PM), https://patriots.win/p/17txtLHZAM/texas-ag-paxton-opens-undercover/c/4ZDtR7Vc7CJ.  Another called for a "[f]iring squad for treasonous NGOs."  @bringbackthe80s, Patriot.Win (Aug. 21, 2024, 7:56 PM), https://patriots.win/p/17txtLHZAM/texas-ag-paxton-opens-undercover/c/4ZDtR7UScHQ.

39.     Other comments were even more specific.  For example, one commentator praising the Attorney General's raid on LULAC members' homes wrote that he wanted to see LULAC members "get gunned the fuck down for everyone to see.  Just twitch motherfucker just fucking breathe wrong and be on the receiving end

of a mag dump.  Time for these assholes to live in fear."  @Datamancer, Patriots.Win

(Aug. 29, 2024, 5:56 PM),  https://patriots.win/p/17ty2krkCO/texas-ag-ken-paxton-

launches-ele/c/4ZDtkvrJn7Z.



**Datamancer**  26 points  14 days ago

Light them the fuck up. I so fucking want one of these dems to resist and get
gunned the fuck down for everyone to see. Just twitch motherfucker just fucking
breathe wrong and be on the receiving end of a mag dump.

Time for these assholes to live in fear.

permalink   award   deport   block   reply

40.     These supporters of Defendant's actions understood that the goal was

intimidation.  "The process is the punishment.  Destroy their lives."  @Cuck_Slayer24,

Patriots.Win (Aug. 30, 2024, 7:14 AM), https://patriots.win/p/17ty2krkCO/texas-ag-

ken-paxton-launches-ele/c/4ZDtl0XzIlX.

**Cuck_Slayer24**  1 points  13 days ago

Finally fucking someone somewhere starts putting the screws to these commie fucks. The process is the punishment. Destroy their lives.

permalink   award   deport   block   reply

41.     Notwithstanding Defendant's pretextual reasons for the investigation

into voter registration drives, "[e]very legitimate study ever done on the question

shows that voting by noncitizens in state and federal elections is vanishingly rare."

Sean Morales-Doyle, *Noncitizens Are Not Voting in Federal or State Elections—Here's*

*Why*, Brennan Ctr. for Just. (Apr. 12, 2024), https://perma.cc/WCX3-YKVC.  One

recent study, which looked at 42 jurisdictions in the 2016 general election, found 30

incidents of suspected noncitizen voting among 23.5 million votes—a rate of 0.0001%.

*See id.*

42.     Jolt and its associates reacted to news of Defendant's investigation with alarm.

43.     On August 23, 2024, Jolt Action sent out an email blast to thousands of supporters titled: "URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work."  In this email, Jolt Action accused the Attorney General of "suppress[ing] voter registration" and "attack[ing] Texans once again."

44.     Also on August 23, Jolt Action publicly criticized the Attorney General on its Facebook page, writing that "we won't stay quiet, and we are prepared to make our voices heard to ensure voting rights aren't infringed upon."  An image included with the post stated: "AG Investigation Disrupts Jolt Organizers' Important Work."

**D. Defendant's RTE to Jolt Initiative**

45.     Despite having no evidence (or even suspicion) of wrongdoing, the Attorney General promptly targeted Jolt.

46.     On August 31, 2024, Jolt Initiative received a Request to Examine (RTE) from the Office of the Attorney General.  A true and accurate copy of the RTE is attached as Exhibit A.

47.     The RTE instructed Jolt Initiative to provide, by September 19, 2024, four categories of documents:

> 1. Each of Your volunteer deputy registrars' certificates of appointment.
>
> 2. All Documents Jolt provides to your volunteer deputy registrars Concerning the voter registration application process.

3. All Documents Jolt provides to your volunteer deputy registrars Concerning Your role in the voter registration application process.

4. Each of the completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by You.

48.     Defendant did not identify any reason why he needed the documents. He did not accuse Jolt of any wrongdoing.  And he did not obtain permission or authority from a court to obtain these documents.

49.     Defendant purported to issue the RTE pursuant to Texas Business Organizations Code § 12.151, which allows the Attorney General to inspect corporate records "as the attorney general considers necessary in the performance of a power or duty of the attorney general, of any record of the entity."

50.     The RTE further threatened that if Jolt did not comply, the Attorney General could take action under Texas Business Organizations Code § 12.155, which provides that failure or refusal to permit the Attorney General to inspect records "forfeits the right of the entity to do business in this state, and the entity's registration or certificate of formation shall be revoked or terminated."

51.     It is also Class B misdemeanor to fail to or refuse to provide records requested by the Attorney General.  *See* Tex. Bus. Orgs. Code § 12.156.

52.     In response to Defendant's attempt earlier this year to use an RTE to harass a nonprofit serving migrants, a Texas state court declared §§ 12.151 and 12.152 facially unconstitutional.  *See Annunciation House, Inc. v. Paxton*, No. 2024DCV0616 (Tex. Dist. Ct. July 1, 2024).

53.     Upon information and belief, the Attorney General has previously tried

13

to make public the confidential records he received in response to an RTE.  For example, he recently tried to make public bank account numbers and other highly confidential records produced in response to an RTE, and he would have succeeded if a judge had not prevented it.

### E. Disclosing the Information Sought by the RTE Would Irreparably Harm Jolt and Its Associates

54.     The RTE demands confidential information, and Jolt cannot disclose it without irreparably harming its mission, its associates, and its constitutionally protected efforts.

55.     After being served with the RTE, Jolt leadership promptly discussed it with board members, who were shaken, upset, and frustrated that Jolt was being unfairly targeted with this unreasonable demand.

56.     The board concluded that it could not comply with the RTE without jeopardizing the safety of its VDRs or the confidences of its partners and the Latino community.  If Jolt were to provide the documents requested, it would make it more difficult for Jolt to fulfill its mission of encouraging Latinos to become more politically active.

57.     Latinos in Texas have particular reason to fear the Attorney General, given his open efforts to intimidate groups and people with whom he disagrees.  No one wants to be the next person the Attorney General attacks with a frivolous threat of prosecution or unjustified law enforcement raid.

58.     Some Latinos in Texas have friends or family members who are

undocumented, and they fear that if they draw attention to themselves, they may place their friends or family at risk.  Other Latinos may be going through the process of becoming citizens, and they may worry that if they criticize the government or are associated with a controversial stand, they will jeopardize their immigration status.

59.     Jolt is particularly concerned about public disclosure of personal identifying information of its VDRs and the voters they help register.  Such disclosure may subject VDRs and voters to threats and harassing communications, and may even place them at risk of violence from extremists who believe the Attorney General's false accusations that organizations like Jolt are helping ineligible people register to vote.  Jolt's concern for their safety is particularly acute given the numerous violent and threatening comments on social media targeting Jolt and other voter registration groups.

60.     Already, Jolt has felt the effects of the Attorney General's intimidation campaign.  Some of Jolt's partners have been less willing to collaborate with Jolt publicly.  And the number of voters registered by Jolt's VDRs has declined since the announcement of the Attorney General's investigation.

61.     If Jolt were forced to disclose confidential information to the Attorney General, it would be considered a betrayal of the trust that Jolt has earned from the Texas Latino community.  It would make it more difficult for Jolt to associate with others and carry out its mission effectively, and it would likely put Jolt employees and others associated with the organization in danger.

15

## CAUSES OF ACTION

### Count I

### Fourth Amendment (42 U.S.C. § 1983)

62. Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

63. The Fourth Amendment, which applies to the States through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

64. "Based on this constitutional text," the Supreme Court "has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015) (internal quotation marks and alterations omitted).

65. The Attorney General's demand for documents was not made pursuant to a judicial warrant backed by probable cause. In fact, Defendant's demand for documents has not been ratified by any court.

66. Nor does Defendant's demand for documents constitute a permissible administrative search, which must be conducted pursuant to some "'special need' other than conducting criminal investigations." *Id.* at 420. The Attorney General has identified no such special need for these documents, and none is apparent.

67.     Moreover, even if there were a special need, an administrative search must provide for pre-disclosure judicial review.  And such review must permit the target to challenge the reasonableness of the inquiry, including its scope, relevance, and burden.  Although the RTE states that Jolt "may *attempt* to obtain judicial review of the RTE before September 19, 2024," Ex. A (emphasis added), it does not guarantee that Jolt will actually *obtain* that review before it is required to produce documents.  And even if Jolt does obtain review, there is no guarantee that it will be the kind of reasonableness review that the law requires.

68.     For these reasons, the RTE violates the Fourth Amendment.

## Count II

### Freedom of Association (42 U.S.C. § 1983)

69.     Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

70.     The First Amendment's protection of the freedom of association, which applies to the states through the Fourteenth Amendment, provides "protection to collective effort on behalf of shared goals."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  As the Supreme Court has noted, "[p]rotected association furthers a wide variety of political, social, economic, educational, religious, and cultural ends, and is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority."  *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (*AFP*) (internal quotation marks omitted).

17

71.     Freedom of association protects not only "advocacy groups," but also *any* group that "engage[s] in some form of expression, whether it be public or private." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

72.     Plaintiff engages in a wide variety of protected expression, including by uplifting the power of young Latino voters, mobilizing young Latino voters with the goal of forging a democracy that works for everyone, seeking to register young Latinos to vote, and advocating for the nearly 11 million Latinos in Texas.

73.     Jolt's association with others is critical to its exercise of its expressive rights.  In order to further its goal of increasing civic participation, Jolt builds the leadership capacity of millennial Latinos to mobilize their peers to action, and it trains community members to conduct nonpartisan voter registration.  If Jolt's relationships with these community members were impaired, Jolt's ability to effectively communicate its message would be significantly impaired.

74.     Plaintiff and its VDRs engage in "core protected speech" when they encourage citizens to register at Jolt voter registration drives.  *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 390 (2013).  This speech includes, but is not limited to, "urging citizens to register; distributing voter registration forms; helping voters to fill out their forms; and asking for information to verify that registrations were processed successfully." *Id.* at 389 (internal quotation marks omitted).

75.     VDRs' association with Jolt and others is critical to their exercise of expressive rights.  VDRs work with Jolt because they believe in furthering Jolt's goal

of increasing civic participation among Latinos in Texas, and they wish to engage in advocacy in furtherance of that goal by encouraging and helping people to register at Jolt voter registration drives.  Voters, in turn, rely on Jolt for election-related information and support with their voter registration.

76.    Disrupting Jolt's association with its VDRs would significantly impair Jolt's and its VDRs' ability to conduct voter registration drives and effectively communicate their message.

77.    The Supreme Court has recognized for decades that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action."  *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).  That is because disclosure can subject organizations and individuals to threats of harassment, reprisals, and "other manifestations of public hostility."  *Id.*

78.    Harassment need not be certain to occur for a plaintiff to state an association claim.  The Supreme Court has emphasized instead that the First Amendment is implicated "by 'state action which *may* have the effect of curtailing the freedom to associate,' and by the '*possible* deterrent effect' of disclosure."  *AFP*, 594 U.S. at 616 (emphasis in original) (quoting *NAACP*, 357 U.S. at 460–61).

79.    The disclosure need not be made public in order to infringe on associational rights.  Rather, "disclosure requirements can chill association '[e]ven if

19

there [is] no disclosure to the general public.'" *Id.* (quoting *Shelton v. Tucker*, 364 U.S. 479, 485 (1960)).

80.     Where a threatened disclosure burdens a plaintiff's association rights, courts apply at least "exacting scrutiny." *See id.* at 607 (plurality opinion).  That standard "requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Id.* at 611 (majority opinion) (internal quotation marks and citation omitted).  It is Defendant's burden to show that this standard has been met.

81.     Jolt and those who affiliate with it have many reasons to fear retaliation or harassment should Jolt provide Defendant with their identities.

82.     Upon information and belief, Defendant is currently undertaking a groundless campaign of intimidation against organizations and individuals involved in registering Latino citizens to vote.  Associates of Jolt have every reason to fear that they will be targeted if Defendant learns of their relationship.

83.     Associates of Jolt also have reason to fear threats of violence, harassment, or other repercussions should their identities and association with Jolt become public.

84.     Defendant's demand for documents fails exacting scrutiny because it is not made for any lawful purpose, let alone a sufficiently important one.  It is a baseless attempt to intimidate organizations and individuals engaged in

constitutionally protected activity. And even if the RTE were made for a sufficiently important interest, it is neither related nor tailored to that interest.

85.    Therefore, Defendant's demand for Jolt's records violates the First Amendment.

## Count III

### Freedom of Speech – Retaliation (42 U.S.C. § 1983)

86.    Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

87.    The Constitution prohibits the government from taking adverse action against a person for the exercise of their First Amendment rights. *E.g., Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

88.    To state a claim for retaliation, plaintiffs "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

89.    Jolt engages in a large amount of constitutionally protected expression and association, including by conducting voter registration drives, urging Texans to vote, and speaking out on issues of importance to Latinos in Texas.

90.     The targeting of Jolt with the RTE has an objective chilling effect.  *See Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018) (en banc) (describing as "self-evident" the chilling effect that forced document production can have).  As described above, Defendant is engaged in an intimidation campaign against individuals and organizations—like Jolt—that seek to promote civic involvement among Latinos in Texas.  A person of ordinary firmness would be discouraged from promoting voter registration and civic engagement under these circumstances.

91.     The RTE was substantially motivated by Plaintiff's First Amendment activities, particularly the organization of Latino community members and encouragement of voter registration.

92.     Indeed, it appears that Defendant targeted Jolt precisely because Jolt encourages people to register and has repeatedly spoken out about issues related to civic engagement in Texas.

93.     Defendant initiated his baseless investigation into noncitizen voting one day after a far-right "citizen journalist" accused Jolt of "infiltrating Texas [DPS] locations" and tagged Defendant's X account.

94.     Jolt Action subsequently criticized Defendant for his attempts to intimidate those involved in registering people to vote.

95.     One week after Jolt Action's criticism of Defendant, Defendant sent Jolt the RTE.

96.     Therefore, Defendant's RTE unconstitutionally retaliates against Plaintiff for its constitutionally protected expression and association.

## Count IV

### Voting Rights Act – Intimidation (52 U.S.C. § 10307(b))

97.     Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

98.     Section 11(b) of the Voting Rights Act provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote." 52 U.S.C. § 10307(b).

99.     Section 11(b) protects those "assisting . . . others in registering to vote" from "official acts of harassment." *Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968).

100.    Through its voter registration drives and voter education campaigns, Jolt "urg[es]" and "aid[s]" eligible Texans to vote.

101.    Defendant's RTE targets Jolt and its associates as a result of their civic engagement and voter registration efforts.

102.    The RTE has the purpose and effect of intimidating, or attempting to intimidate, Jolt and its associates from engaging in these federally protected activities.

103.    Therefore, the RTE violates Section 11(b) of the Voting Rights Act.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in its favor and:

1) Declare that the Attorney General's Request to Examine is unconstitutional, violates federal law, and is invalid and unenforceable.

2) Issue a preliminary and permanent injunction enjoining the Attorney General—including his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction—from taking any action to enforce or otherwise implement the Request to Examine.

3) Award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

4) Grant Plaintiff such other relief the Court deems just and proper.

Respectfully submitted this September 13th, 2024,

/s/ Mimi Marziani
Mimi Marziani
    Texas Bar No. 24091906
Joaquin Gonzalez
    Texas Bar No. 24109935
MARZIANI, STEVENS &
GONZALEZ PLLC
1533 Austin Highway
Suite 102-402
San Antonio, TX 78218
Phone: (210) 343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com

Ben Gifford*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
Phone: (202) 662-9835
bg720@georgetown.edu

Mary McCord*
Joseph Mead*
William Powell*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9042
mbm7@georgetown.edu
jm3468@georgetown.edu
william.powell@georgetown.edu

*Attorneys for Plaintiff*

**Application for admission pro hac vice forthcoming*