## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

JOLT INITIATIVE, INC.,

       *Plaintiff,*

  v.

KEN PAXTON, in his official capacity as
Attorney General of Texas,

       *Defendant.*

Case No.: 1:24-cv-01089

## <u>PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Plaintiff Jolt Initiative, Inc. (Jolt), by and through its undersigned counsel, hereby moves the Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order and preliminary injunction enjoining the enforcement of Defendant Attorney General Ken Paxton's request to examine (RTE), issued on August 30, 2024. Jolt respectfully requests that this Court issue a TRO or PI prior to September 19, 2024, the deadline to comply with the RTE.

## INTRODUCTION

This case is about Defendant's latest efforts to intimidate Latino voting rights organizations. Following the circulation on social media of conspiracy theories about noncitizen voting, Defendant launched an investigation into nonprofits like

1

Jolt that register Texans to vote.  Shortly thereafter, Defendant served Jolt with an RTE demanding confidential information, including the names of Volunteer Deputy Registrars (VDRs) who work with Jolt and voters registered by them.  Defendant has threatened to revoke Jolt's ability to operate in Texas if it does not comply.

The RTE violates Jolt's Fourth Amendment rights because it provides no opportunity to obtain precompliance review.  It also violates Jolt's freedom of association and retaliates against Jolt for protected expression.  And it violates the Voting Rights Act because it intimidates Jolt for helping voters register.  This Court should enjoin Defendant from enforcing the RTE before the September 19 deadline.

## BACKGROUND

Jolt Initiative, Inc. is a 501(c)(3) nonprofit organization, incorporated in Texas, that seeks to "increase the civic participation of Latinos in Texas to build a stronger democracy."  Bastard Decl. ¶ 6.  Founded in 2016, Jolt "conduct[s] voter registration drives throughout the state," *id.* ¶ 11, "train[s] community members to conduct nonpartisan voter registration," *id.* ¶ 10, and "encourages Latinos in Texas to vote through public education campaigns, leadership programming, and other measures," *id.* ¶ 19.  Jolt also "speak[s] out on issues that matter to Latinos in Texas."  *Id.* ¶ 22.

Many of Jolt's employees and volunteers are VDRs who are authorized under state law to handle voter registration forms.  *See id.* ¶ 12.  At Jolt registration drives, VDRs speak with people who are interested in registering, "explain the

eligibility requirements, answer any questions, and walk them through the process of filling out a voter registration form." *Id.* ¶ 16.  VDRs then deposit completed voter registration forms with the county registrar.  *Id.*

On August 20, 2024, a far-right activist posted a video on X in which he purported to confront a Jolt VDR outside of a Texas Department of Public Safety office.  *See* hernando arce (@hernandoarce), X (Aug. 20, 2024, 1:53 PM), https://x.com/hernandoarce/status/1825954284858417608.  The post said, "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio," and it tagged Defendant's X account (@KenPaxtonTx), among others.  *Id.*  The post came two days after a different social media post by a television personality with a history of promoting conspiracy theories, which falsely claimed that people who were ineligible to vote were being registered at locations in and around Fort Worth.  *See* Maria Bartiromo (@MariaBartiromo), X (Aug. 18, 2024, 9:56 AM), https://perma.cc/B7MD-PRKC; Berenice Garcia, *A Fox News Host's Debunked Election Conspiracy Appears to Have Prompted a State Investigation*, Tex. Trib. (Aug. 26, 2024), https://perma.cc/9PM6-H9YS.

The day after he was tagged by the far-right activist, Defendant announced that he was launching "an investigation into reports that organizations operating in Texas may be unlawfully registering noncitizens to vote in violation of state and federal law."  Press Release, Tex. Office of Att'y Gen., *Attorney General Ken Paxton Launches Investigation into Reports That Organizations May Be Illegally*

*Registering Noncitizens to Vote* (Aug. 21, 2024), https://perma.cc/EF4H-E6PP.

Defendant specifically "call[ed] into question the motives of the nonprofit groups"

that register voters outside of DPS offices. *See id.* Jolt's sister organization, Jolt

Action, Inc., issued a statement days later criticizing Defendant for "suppress[ing]

voter registration" and "attack[ing] Texans once again." Bastard Decl., Ex. A.

Although noncitizen voting is basically nonexistent, Defendant's decision to

investigate comes as no surprise. Rather, it is just another example of the State's

reliance on baseless claims of voting irregularities as a pretext to engage in voter

suppression. In 2011, for example, when Texas passed the original version of its

strict photo ID law, the legislation was purportedly motivated by concerns of in-

person fraud and noncitizen voting. But a federal district court found that the

policy underlying the law was "tenuous," particularly given "the rarity of in-person

voter impersonation fraud and non-citizen voting," *see Veasey v. Perry*, 71 F. Supp.

3d 627, 698 (S.D. Tex. 2014), and the en banc Fifth Circuit affirmed that decision in

relevant part, *see Veasey v. Abbott*, 830 F.3d 216, 262–65 (5th Cir. 2016). Likewise,

in 2019, then-Secretary of State David Whitley issued an election advisory calling

for the purge of almost 100,000 people from Texas's voter rolls based on allegations

that the individuals were noncitizens. *See Secretary Whitley Issues Advisory on*

*Voter Registration List Maintenance Activity*, Tex. Sec. of State (Jan. 25, 2019),

https://perma.cc/35LL-SDPL. The claims were immediately debunked, and after

three lawsuits and a congressional investigation ensued, Whitley resigned. *See*

Alexa Ura, *Texas Secretary of State David Whitley Departs as Legislative Session Ends*, Tex. Trib. (May 27, 2019), https://perma.cc/XXF5-AAKC.

Defendant's investigation is also unsurprising given his recent abuse of consumer protection and business laws to target groups he disfavors. *See, e.g.*, Vianna Davila, *Ken Paxton Has Used Consumer Protection Law to Target These Organizations*, ProPublica (May 30, 2024), https://perma.cc/ZQN8-U8F4.  In particular, over the past nine months, Defendant has turned his attention to groups that organize around and support Latinos in Texas.  This includes **Annunciation House**, *see* Alejandro Serrano et al., *Judge Denies Texas Attorney General's Efforts to Use Consumer Protection Law to Shut Down a Migrant Shelter*, ProPublica (July 3, 2024), https://perma.cc/53CF-3KBF; **Catholic Charities of the Rio Grande Valley**, *see* Berenice Garcia, *Texas Attorney General Can't Question Catholic Charities Director over Migrant Services, Court Says*, Tex. Trib. (July 24, 2024), https://perma.cc/QVA6-89RG; **FIEL**, *see* Alejandro Serrano, *Judge Rejects Attorney General Ken Paxton's Attempt to Shut Down Houston Immigrant Rights Group*, Tex. Trib. (Aug. 23, 2024), https://perma.cc/G5KD-YYFB; and **Team Brownsville**, *see* Luis Montoya, *Judge Blocks Paxton from Deposing Team Brownsville Leader*, Rio Grande Guardian (Aug. 31, 2024), https://perma.cc/WGN7-EN4G.

Sadly, it was therefore unsurprising that Jolt would be next, given its exclusive focus on Latino voters.  On August 30, 2024, Defendant issued the RTE.  *See* Bastard Decl., Ex. B.  The RTE demands four categories of documents: (1)

certificates of appointment for Jolt's VDRs; (2) documents that Jolt provides to its VDRs concerning voter registration; (3) documents that Jolt provides to its VDRs concerning Jolt's role in voter registration; and (4) receipts for completed registration applications. *Id.* at 6. The deadline to comply is September 19, 2024, and although Jolt "may *attempt* to obtain judicial review of the RTE before" that date, *id.* at 2 (emphasis added), the RTE makes no guarantee that Jolt will actually obtain review before compliance is due. If Jolt fails to comply, the RTE threatens "legal action for [Jolt's] 'registration or certificate of formation' to 'be revoked or terminated.'" *Id.* (quoting Tex. Bus. Org. Code § 12.155).

## STANDARD OF REVIEW

A plaintiff moving for a preliminary injunction or temporary restraining order must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (internal quotation marks omitted); *see Turner v. Epps*, 460 F. App'x 322, 325 n.3 (5th Cir. 2012) (per curiam). The first factor, likelihood of success, is "arguably the most important." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1099 (5th Cir. 2023).

## ARGUMENT

### I.   Jolt Is Likely to Succeed on the Merits

### A. The Fourth Amendment Requires an Opportunity to Obtain Precompliance Review of the RTE

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "Based on this constitutional text," the Supreme Court "has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions."  *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015) (internal quotation marks and alterations omitted).  As relevant here, the Court has held that "administrative searches"—which are conducted pursuant to some "special need other than conducting criminal investigations"—are constitutional if "the subject of the search [is] afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Id.* at 420 (internal quotation marks omitted).

Although the RTE does not reveal the purpose of the search, it appears to be part of Defendant's investigation into noncitizen voting.  *See* Press Release, *supra*. If the RTE is part of a criminal investigation, the administrative search exception to the warrant requirement does not apply at all.  *See Patel*, 576 U.S. at 419–20.  But even assuming the RTE was issued pursuant to some "special need," Jolt cannot be required to comply before having an opportunity to obtain review of the RTE.

The Supreme Court has not specified the exact form that precompliance review must take, but it has approved of administrative subpoenas, which provide the recipient with an opportunity to challenge a subpoena's reasonableness. *See id.* at 420. Specifically, "when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 (1967). Here, Defendant has denied Jolt the opportunity to object to the scope, relevance, and specificity of the RTE. Although the RTE states that Jolt "may *attempt* to obtain judicial review of the RTE before September 19, 2024," Bastard Decl., Ex. B (emphasis added), it does not guarantee that Jolt will actually *obtain* review before it is required to produce documents. And the state law provisions on which Defendant relies do not provide for any precompliance review, *see* Tex. Bus. Org. Code §§ 12.151, 12.152, let alone the kind of reasonableness review contemplated by the Supreme Court's cases. For this reason, at least one court has declared these provisions facially unconstitutional. *See Annunciation House, Inc. v. Paxton*, No. 2024DCV0616 (Tex. Dist. Ct. July 1, 2024). Because the RTE does not provide for precompliance review, this Court should enjoin Defendant from enforcing it.

### B. The RTE Violates Jolt's Freedom of Association

"The First Amendment prohibits government from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to

8

petition the Government for a redress of grievances.'" *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 605–06 (2021) (*AFP*).  In addition, the Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

As discussed in Section I.C, there can be no question that Jolt is engaged in quintessential protected expression, both individually and in association with others.  *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000) ("An association must merely engage in expressive activity that could be impaired in order to be entitled to protection.").  Jolt is an organization dedicated to "increas[ing] the civic participation of Latinos in Texas to build a stronger democracy and ensure that everyone's voice is heard."  Bastard Decl. ¶ 6.  In furtherance of that goal, "Jolt mobilizes young Latino voters, particularly those between the ages of 18 and 32." *Id.*  And a critical part of achieving Jolt's mission is "training community members to conduct nonpartisan voter registration."  *Id.* ¶ 10.  The Fifth Circuit has described this sort of voter outreach as "core protected speech."  *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 390 (2013) (internal quotation marks omitted).

There can also be no question that disclosing the identities of Jolt's VDRs and registered voters would chill Jolt's expressive association.  The Supreme Court has recognized for decades that "compelled disclosure of affiliation with groups engaged

9

in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).  That is because disclosure can subject organizations and individuals to threats of harassment, reprisals, and "other manifestations of public hostility."  *Id.*  Backlash following disclosure, moreover, need not be guaranteed for Jolt to show a burden on its association rights.  To the contrary, the First Amendment is implicated "by 'state action which *may* have the effect of curtailing the freedom to associate,' and by the '*possible* deterrent effect' of disclosure."  *AFP*, 594 U.S. at 616 (emphasis in original) (quoting *NAACP*, 357 U.S. at 460–61).

And the threats in this case are "neither theoretical nor groundless."  *Shelton v. Tucker*, 364 U.S. 479, 486 (1960).  The record makes clear that Defendant is currently engaged in a pervasive intimidation campaign.  The most recent targets of that campaign appear to be individuals and organizations that promote civic engagement in Texas, particularly among Latinos.  *See* Roman Palomares, *LULAC Fights Back: How We're Standing up to Texas's Voter Suppression*, https://lulac.org/texas_raids/ ("Paxton has been aggressively targeting and harassing Latino-led organizations, . . . as well as individual citizens."); Edgar Sandoval, *Latino Civil Rights Group Demands Inquiry Into Texas Voter Fraud Raids*, N.Y. Times (Aug. 25, 2024), https://www.nytimes.com/2024/08/25/us/texas-latinos-democrats-raids-paxton.html (describing the "series of raids conducted on Latino voting activists and political operatives as part of a sprawling voter fraud

inquiry by" Defendant); *see also Nadler, Escobar, Scanlon Demand Answers on Texas AG Paxton's Efforts to Intimidate Latino Voting Rights Advocates, Elected Leaders, and Candidates* (Sept. 6, 2024), https://perma.cc/K7YA-SHK5.  Against this backdrop, the VDRs and voters associated with Jolt have ample "reason to remain anonymous," *AFP*, 594 U.S. at 617; indeed, they have a firm basis to believe that if their affiliation with Jolt is revealed, Defendant will subject them to his heavy-handed investigation tactics.  *See* Sandoval, *supra* (describing 6 a.m. armed raid of 87-year-old LULAC member's house).

On the current record, Defendant fails exacting scrutiny at each step.  He has revealed no purpose for issuing the RTE and demanding identifying information of

Where a threatened disclosure burdens a plaintiff's association rights, courts apply at least "exacting scrutiny."  *See AFP*, 594 U.S. at 607 (plurality opinion).  That standard "requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes."  *Id.* at 611 (majority opinion) (internal quotation marks and citation omitted).  It is Defendant's burden to prove this standard has been met.  *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).  And where a plaintiff seeks a TRO or preliminary injunction, it "must be deemed likely to prevail unless the Government has shown that" the challenged practice is constitutional.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (internal quotation marks omitted).

On the current record, Defendant fails exacting scrutiny at each step.  He has revealed no purpose for issuing the RTE and demanding identifying information of

people associated with Jolt, let alone a sufficiently important interest to which the RTE bears a substantial relation and is narrowly tailored.  As noted above, the RTE appears to be part of Defendant's investigation into noncitizen voting, which is so rare as to be almost nonexistent.  *See, e.g.*, Sean Morales-Doyle, *Noncitizens Are Not Voting in Federal or State Elections—Here's Why*, Brennan Ctr. for Just. (Apr. 12, 2024), https://perma.cc/WCX3-YKVC (explaining that "[e]very legitimate study ever done on the question shows that voting by noncitizens in state and federal elections is vanishingly rare"); *see also* Carrie Levine, *How Unfounded GOP Claims About Noncitizen Voting Could Cost Some Eligible Voters Their Rights*, Votebeat (Sept. 11, 2024), https://perma.cc/BS73-6TAE.  But even if noncitizen voting were a sufficiently important interest—a premise that Defendant has done nothing to support—the RTE's demand for Jolt's confidential records is neither related nor tailored to that interest.  Defendant has made no showing that Jolt registers noncitizens to vote or that the records sought by the RTE are necessary to evaluate such a baseless suspicion.  *See ACLU*, 542 U.S. at 666 (government must show narrow tailoring).  At best, the RTE is a fishing expedition.  At worst, it is a pretext to dissuade Jolt from registering voters and to further a national political narrative about noncitizen voting.  Either way, it does not satisfy exacting scrutiny.

### C. The RTE Retaliates Against Protected Expression

The RTE also violates the First Amendment because it retaliates against Jolt for engaging in protected expression.  *See Colson v. Grohman*, 174 F.3d 498, 508

(5th Cir. 1999) ("[T]he First Amendment prohibits not only direct limitations on
speech but also adverse government action against an individual because of her
exercise of First Amendment freedoms.").  Retaliation claims have three elements:
plaintiffs "must show that (1) they were engaged in constitutionally protected
activity, (2) the defendants' actions caused them to suffer an injury that would chill
a person of ordinary firmness from continuing to engage in that activity, and (3) the
defendants' adverse actions were substantially motivated against the plaintiffs'
exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258
(5th Cir. 2002).  Each of these elements is satisfied here.

### 1. Jolt Is Engaged in Protected Activity

Jolt is engaged in classic First Amendment expression.  It is an "an
organization centered around uplifting the power of young Latino voters."  Bastard
Decl. ¶ 6.  It mobilizes community members with "the goal of forging a democracy
that works for everyone."  *Id.*  And it "speak[s] out on issues that matter to Latinos
in Texas."  *Id.* ¶ 22.  The Supreme Court has described this sort of advocacy as "core
political speech."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014).

In the context of voter registration specifically, "Jolt exists to support the
Latino community and to encourage our communities to get out and vote in record
numbers."  Bastard Decl. ¶ 10.  The Fifth Circuit has made clear that these
activities, too, are protected expression.  In *Voting for America, Inc. v. Steen*, 732
F.3d 382 (5th Cir. 2013), the court addressed the constitutionality of several

provisions of Texas's VDR law.  Although the court upheld the law, it described

several components of registration—including "urging citizens to register;

distributing voter registration forms; helping voters to fill out their forms; and

asking for information to verify that registrations were processed successfully"—as

"constitutionally protected speech."  *Id.* at 389 (internal quotation marks omitted);

*see id.* at 390 ("voter registration drives involve core protected speech").

## 2.  The RTE Would Chill a Person of Ordinary Firmness

Although the Fifth Circuit does not recognize retaliatory investigation claims,

*see Villarreal v. City of Laredo*, 94 F.4th 374, 398 (5th Cir. 2024) (en banc), it has

described as "self-evident" the chilling effect that forced document production can

have, *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018) (en banc).

As described above, Defendant is engaged in an intimidation campaign against

individuals and organizations—like Jolt—that seek to promote civic involvement

among Latinos in Texas.  And Jolt has every reason to believe that its expressive

activities will be impaired by this campaign if it is forced to identify its voters and

VDRs, and the materials that it provides to those VDRs.

A person of ordinary firmness would be discouraged from promoting voter

registration and civic engagement under these circumstances.  Indeed, the

experiences of those already swept up in Defendant's dragnet could hardly be more

harrowing.  Eighty-seven-year-old Lidia Martinez described feeling "scared" and

"harassed" after an early-morning raid of her home, and she was still "shaken" days

14

later.  *See* Sandoval, *supra* (internal quotation marks omitted).  Faced with the risk of similar treatment, Jolt has been unequivocal that compliance with the RTE "would make it more difficult for Jolt to fulfill its mission of encouraging Latinos to become more politically active."  Bastard Decl. ¶ 35.

Jolt also faces the prospect of private retaliation.  As discussed further below, Jolt and its VDRs have been targeted by far-right activists who have falsely accused them of misconduct.  And these accusations have led to threatening comments.  *See, e.g.*, hernando arce (@hernandoarce), X (Sept. 4, 2024, 4:41 PM), https://perma.cc/VF48-SGXB ("I continue my hunt for Marxist Anti American organizations like @JoltAction . . . .");  Mr. Super Angry (@1AlphaOmega66), X (Sept. 5, 2024, 9:08 AM), https://perma.cc/2F9L-2XR6 ("I too want to go hunting these scum.").  These threats, moreover, occur within the broader context of increasingly common political violence in Texas.  *See, e.g.*, Kate McGee, *After Four Years, Wendy Davis' Lawsuit Against "Trump Train" Goes to Trial*, Tex. Trib. (Sept. 6, 2024), https://perma.cc/H6GR-5SM3.  Against this backdrop, the risk of chill is obvious.

### 3.  The RTE Was Motivated by Jolt's Expression

Finally, the RTE was substantially motivated by Jolt's First Amendment activities, particularly the organization of Latino community members and the encouragement of voter registration.  Defendant has made clear his hostility toward voter registration—particularly Latino voter registration—through his recent investigation into noncitizen voting.  As discussed, noncitizen voting is vanishingly

rare, and it appears that Defendant's investigation was sparked not by any evidence, but rather by an unsubstantiated social media post that has since been debunked by local election officials. *See* Garcia, *supra*. Although the post underlying Defendant's investigation was discredited, Defendant has used it as a pretense to target organizations that encourage people to register. Even after the claims that prompted Defendant's investigation were debunked, the Department of Public Safety announced that it was disallowing registration outside of its offices, thus targeting voter registration organizations like Jolt. *See id.*

Indeed, it appears that Defendant targeted Jolt precisely because Jolt encourages people to register. Two days after the debunked post just discussed, a self-described "citizen journalist" and "Alpha MAGA Male" posted a video on X in which he purported to confront a Jolt VDR outside of a Texas Department of Public Safety office. *See* hernando arce (@hernandoarce), X (Aug. 20, 2024, 1:53 PM), https://x.com/hernandoarce/status/1825954284858417608. The post said, "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio," and it tagged @KenPaxtonTx, among others. *Id.* Defendant announced his investigation the next day, *see* Press Release, *supra*, and two days later, Jolt's sister organization—Jolt Action, Inc.—issued a statement criticizing Defendant for "suppress[ing] voter registration" and "attack[ing] Texans once again." Bastard Decl., Ex. A. The following week, Jolt received the RTE. At the TRO stage, that is sufficient to show substantial motivation.

### D. The RTE Violates Section 11(b) of the Voting Rights Act

Section 11(b) of the Voting Rights Act provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote."  52 U.S.C. § 10307(b).  By its terms, the statute prohibits not only intimidation of voters, but also intimidation of organizations and individuals that conduct voter registration. *See Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968) (explaining that § 11(b) protects those "assisting . . . others in registering to vote" from "official acts of harassment").  And the statute does not require proof of intent to intimidate, unlike § 131 of the Civil Rights Act of 1957, which prohibits intimidation of another "for the purpose of interfering with the right of such other person to vote."  52 U.S.C. § 10101(b); *see* H.R. Rep. No. 89-439, at 30 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2462 ("[U]nlike [§ 131] (which requires proof of a 'purpose' to interfere with the right to vote) no subjective purpose or intent need be shown.").

Although the case law interpreting § 11(b) is sparse, courts applying the provision have construed it broadly.  One court recently held, for example, that the provision does not prohibit only threats of "violence or bodily harm," but that "threats of economic harm, legal action, dissemination of personal information, and surveillance can qualify depending on the circumstances."  *Nat'l Coal. on Black*

*Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 477 (S.D.N.Y. 2020).  And another

found intimidation where the defendants "linked Plaintiffs' names and personal

information to a report condemning felonious voter registration in a clear effort to

subject the named individuals to public opprobrium."  *LULAC v. Pub. Int. Legal

Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018); *cf.

United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012) (finding

probable cause of voter intimidation under California law where "letter targeted

immigrant voters with threats that their personal information would be provided to

anti-immigration groups").  These interpretations are consistent with § 11(b)'s

purpose, which was to strengthen the "existing prohibitions on voter intimidation."

Ben Cady & Tom Glazer, *Voters Strike Back: Litigating Against Modern Voter

Intimidation*, 39 N.Y.U. Rev. L. & Soc. Change 173, 177 (2015); *see Voting Rights

Act of 1965: Hearings on H.R. 6400 Before the H. Comm. on the Judiciary*, 89th

Cong. 12 (1965) (statement of Nicholas deB. Katzenbach, Att'y Gen. of the United

States) (noting "inadequacies of present statutes prohibiting voter intimidation").

     For substantially the reasons discussed in Sections I.B and I.C.2, Jolt has

shown a likelihood of intimidation within the meaning of § 11(b).  Defendant's

demands for the personal information of voters and VDRs, and for the materials

that Jolt provides to VDRs, are classic examples of the kinds of "official acts of

harassment" that § 11(b) prohibits.  *See Whatley*, 399 F.2d at 526.  If Jolt complies

with the RTE, it risks exposing itself and its associates to raids and other abuses of

Defendant's law enforcement authority.  And if Jolt refuses to comply, it faces the prospect of an action to terminate its charter.  *See* Bastard Decl., Ex. B (threatening to "initiat[e] a legal action for [Jolt's] 'registration or certificate of formation' to 'be revoked or terminated'" (quoting Tex. Bus. Org. Code § 12.155)).  Section 11(b) of the Voting Rights Act prohibits Defendant from putting Jolt to that choice.

## II.    The Remaining Factors Weigh in Favor of a TRO/PI

The other factors also weigh in Jolt's favor.  Given its likelihood of success on its First Amendment claims, Jolt has also shown a likelihood of irreparable harm. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (*OLC*) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (internal quotation marks omitted)).  And the threatened injury here is irreparable for another reason: Once Jolt turns over confidential information revealing its protected associations, the chilling effect of that disclosure cannot be undone.  *Cf. FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504 (5th Cir. 1982); *see also Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("[D]isclosure of confidential information satisfies the irreparable injury prong for purposes of a preliminary injunction." (internal quotation marks omitted)).

Likewise, with respect to the balance of equities, Jolt has "an obvious interest in the continued exercise of its First Amendment rights, and the State has no legitimate interest in" retaliating against Jolt and infringing its freedom of

association.  *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1100 (5th Cir. 2023).  For that reason, "[i]njunctions protecting First Amendment freedoms are always in the public interest."  *OLC*, 697 F.3d at 298 (internal quotation marks and alteration omitted); *see Nken v. Holder*, 556 U.S. 418, 435 (2009) (the balance of equities and public interest factors "merge when the Government is the opposing party").

Although the government generally has an interest in investigating violations of law, it is clear here that Defendant has no legitimate investigative purpose for the RTE.  County registrars already have information on who is certified to act as a VDR and who is registered to vote, so the state government can oversee voter registration efforts without intimidating Jolt.  In addition, although Defendant claims to be investigating whether organizations like Jolt are registering noncitizens to vote, Texas law permits a VDR to review a voter application only for completeness and not to determine if the applicant is actually qualified to register.  *See* Tex. Elec. Code § 13.039; *Volunteer Deputy Registrars*, Tex. Sec. of State, https://perma.cc/38F6-CED5.  Defendant thus appears to be "investigating" VDRs associated with Jolt for merely doing what Texas law requires of them.  This baseless intimidation campaign is not in the public interest.

## CONCLUSION

This Court should grant Jolt's motion for a temporary restraining order and preliminary injunction.

20

Respectfully submitted this September 13th, 2024,


/s/ Mimi Marziani
Mimi Marziani
    Texas Bar No. 24091906
Joaquin Gonzalez
    Texas Bar No. 24109935
MARZIANI, STEVENS &
GONZALEZ PLLC
1533 Austin Highway
Suite 102-402
San Antonio, TX 78218
Phone: (210) 343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com

Ben Gifford*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
Phone: (202) 662-9835
bg720@georgetown.edu


Mary B. McCord*
Joseph Mead*
William Powell*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9042
mbm7@georgetown.edu
jm3468@georgetown.edu
william.powell@georgetown.edu


Attorneys for Plaintiff

*Application for admission pro hac vice forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  There is currently no Counsel of Record for Defendant.  I certify that I will serve the foregoing on Defendant along with the Complaint.

<u>/s/ Mimi Marziani</u>
Mimi Marziani