## DECLARATION OF JACQUELINE BASTARD

I, Jacqueline Bastard, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Deputy Director at Jolt Initiative.  I have served in this role

for 4 years.  I am over the age of 18, have personal knowledge of the information in

this declaration, and am otherwise competent to testify.

2.      I have worked at Jolt for five years.  Before assuming my position as

Deputy Director, I served as the Operations and Human Resources Director.

3.      Jolt Initiative is a nonprofit that is federally exempt from taxes as a

charitable nonprofit under section 501(c)(3) of the Internal Revenue Code.  A

separate nonprofit organization, Jolt Action, is federally exempt from taxes under

section 501(c)(4) of the Internal Revenue Code.  The entities have separate boards

and maintain separate bank accounts.  Except as otherwise specified, I will use

"Jolt" to refer to Jolt Initiative.

4.      I am excited to be part of Jolt because it is an organization that

empowers, equips, and mobilizes individuals to speak up not only for themselves

but for those who are afraid to do so for fear of reprisal.

### Jolt Overview

5.      Jolt Initiative and Jolt Action were founded in 2016 by Cristina

Tzintzún Ramirez.  Jolt Initiative was incorporated in 2017.  Jolt Action was

incorporated in 2016.  A leading civil rights leader and former 2020 U.S. Senate

candidate, she was named "Hero of the New South" by Southern Living Magazine.

Her work in the Latino voter advocacy space has been featured on NPR, Vogue, The

New York Times, MTV, USA Today, Univision, and MSNBC's Up Late with Alec
Baldwin, among others.

6.      Jolt works to increase the civic participation of Latinos in Texas to
build a stronger democracy and ensure that everyone's voice is heard.  We are an
organization centered around uplifting the power of young Latino voters in
particular.  Jolt mobilizes young Latino voters, particularly those between the ages
of 18 and 32, with the goal of forging a democracy that works for everyone.

7.      Among Jolt's policy platforms is "Democracy for All."  We believe that
communities of color have immense power, and politicians know it.  Texas's Latino
population has grown by 2 million in the last decade and Latinos are projected to be
the majority group in the state by 2030.  We know that voting is a right, not a
privilege; nonetheless, Texas has historically discriminated against voters of color
and has continuously attempted to suppress their voting power.  This is why we are
building a movement of young Latinos ready to transform Texas.

8.      Jolt believes that Latinos are the future of Texas and that politicians
should work for us, not just for the interests of corporations of a minority that
refuses to see us as equal.  We deserve to have power and respect, and that means
our democracy should look like us, represent us, and value our voices.

9.      Jolt also works to build "Respect for Immigrant Families."  Texas's
diversity is its greatest strength, and as a state where one out of every six Texans is
an immigrant, we wholeheartedly recognize that immigrants make this country
better.  The criminalization of undocumented immigrants and the demonization of

those who come to this country seeking a better future must end.  Jolt is mobilizing our young Latino community to stand in support of immigrants.

## Voter Registration Efforts

10.     Jolt exists to support the Latino community and to encourage our communities to get out and vote in record numbers.  A vital part of that mission is training community members to conduct nonpartisan voter registration in accordance with state law.

11.     We conduct voter registration drives throughout the state, especially in Dallas, Harris, and Bexar Counties.  Because of these drives, many thousands of eligible Texans have been registered to vote this year alone.

12.     Many of our employees and volunteers have been certified as Volunteer Deputy Registrars (VDRs) in one or more counties.  Under state law, only VDRs may handle voter registration forms before they are submitted to the registrar.

13.     To maintain the high quality of its voter registration drives, it trains its VDRs carefully, closely monitors their work, and has several layers of quality control.  We do all of our work in compliance with the letter and spirit of all laws.

14.     A typical voter registration drive involves a VDR setting up outside a place with high foot traffic, often with a table, a banner, and guidance about voter registration from the counties and the Secretary of State.  For example, we sometimes will set up outside Department of Public Safety locations because of the high number of people coming and going to conduct business.  Although some people at DPS locations have an opportunity to register to vote, not everybody does, such

as parents taking their children for driving tests.  And even for people who do register at DPS locations, Jolt provides information about how to participate in upcoming elections.

15.     At voter registration events, a Jolt VDR will answer questions from passersby who are interested in learning more about voting.  Jolt will typically have pamphlets providing information about voting, such as a map of polling locations and information about the times that precincts are open.  The VDR will also bring blank voter registration forms.

16.     If a person wants to register to vote, a VDR will explain the eligibility requirements, answer any questions, and walk them through the process of filling out a voter registration form.  When the person is finished, the VDR hands the applicant a receipt.  Within five days, the VDR will deposit the completed voter registration form with the county registrar.

17.     The determination whether someone is legally allowed to vote is made exclusively by the Secretary of State and county registrars.  A VDR simply collects the form and provides it to the appropriate government office for decision.  A VDR is not allowed to determine whether someone is actually eligible to vote, and is not legally permitted under Texas law to refuse to submit a completed application to the county registrar.

18.     Jolt also has a presence on college campuses, working to register college students.  For example, Jolt Action has on-campus student chapters that are led by student coordinators, who register as VDRs so that they can help their

classmates register to vote.  Our students are part of a network of young Latinos across Texas working to make our state a better place for everyone.

19.     In addition to voter registration drives, Jolt encourages Latinos in Texas to vote through public education campaigns, leadership programming, and other measures.

20.     For example, Jolt has a presence in high schools, encouraging students to register when they turn 18, and building the foundation for a lifetime of engaged citizenship.  Jolt has also worked to put together the largest research study of Latino voters in Texas history.

21.     Jolt's leadership programs provide training to Latino youth on public speaking, advocacy, organizing, and mobilization so that they can be effective leaders in their community.  The programs also provide education on voting history and participation among Latinos in the United States.

## Other Public Expression

22.     Both Jolt and Jolt Action speak out on issues that matter to Latinos in Texas.  Both organizations use social media, speak to the press, and send out emails to supporters.

23.     Sometimes, these messages are critical of misuses of government power.

24.     For example, on August 10, 2024, Jolt Action posted a video on X in response to legislation in Texas curbing the rights of LBGTQ people.  The caption with the video read: "There's nothing scarier than Republican politicians grabbing

power to control us.  The only way to stop them?  Be a voter.
#OurFreedomsOurFutures."

25.    On August 13, 2024, Jolt Action posted a video on X fact-checking former President Donald Trump's false claims about immigrants, including his false claim that widespread illegal voting by noncitizens undermined the results of the 2020 presidential election.  Along with the video, the X post said: "The misinformation is on a different level these days & we're here to do some (simple, easy-to-google) fact-checking from everyone's least favorite Presidential nominee. Make sure you are registered to vote against anti-immigrant rhetoric this November!  #JoltTheVote."

26.    On August 23, 2024, shortly after the Texas Attorney General raided the homes of six people affiliated with the League of United Latin American Citizens (LULAC), Jolt Action sent out an email blast to thousands of supporters titled: "URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work." In this email, Jolt Action accused the Attorney General of "suppress[ing] voter registration" and "attack[ing] Texans once again."  A true and accurate copy of this email is attached as Exhibit A.

27.    Also on August 23, 2024, Jolt Action made the following public post on its Facebook page, declaring "we won't stay quiet, and we are prepared to make our voices heard to ensure voting rights aren't infringed upon."  A true and accurate depiction of this post is below:



**Social Media Attack in August 2024**

28.     On August 20, 2024, a X user named "@hernandoarce" posted a video of someone confronting a Jolt VDR.  The user wrote "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio." The user tagged our Jolt Action X account and @KenPaxtonTx, among others.  The post was seen tens of thousands of times, and was reshared by more than 800 people as of the date of this declaration.

29.     Jolt leadership immediately became concerned for the safety of all of its employees and VDRs, and shared safety tips on how to handle potentially threatening situations.

30.     One day after this post, on August 21, 2024, the Attorney General issued a press release announcing an investigation into Texas nonprofits that conduct voter registration drives, with a focus on those that do so at DPS locations.

## Request to Examine

31.     Jolt Initiative received a Request to Examine (RTE), dated August 30, 2024, from the Office of the Attorney General.  A true and correct copy of the Request to Examine is attached as Exhibit B.

32.     The RTE was given to Jolt's former executive director on August 31, 2024, who then forwarded it to Jolt.

33.     The RTE instructed Jolt Initiative to provide, by September 19, 2024, four categories of documents:

1.  Each of Your volunteer deputy registrars' certificates of appointment.

2.  All Documents Jolt provides to your volunteer deputy registrars Concerning the voter registration application process.

3.  All Documents Jolt provides to your volunteer deputy registrars Concerning Your role in the voter registration application process.

4.  Each of the completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by You.

34.     The RTE further provided that failure to comply could lead the Attorney General to seek forfeiture of Jolt's registration.

## Fear of Reprisal

35.     Jolt leadership discussed the RTE with board members, who were shaken, upset, and frustrated that Jolt was being unfairly targeted with this demand.  The board concluded that it could not comply with the RTE without

jeopardizing the safety of its VDRs and the confidence of its partners and the Latino community. If Jolt were to provide the documents requested, it would make it more difficult for Jolt to fulfill its mission of encouraging Latinos to become more politically active.

36.     The RTE demands confidential information, such as the identities of all people who serve with us as VDRs. We do not publicly share the identities of all of our VDRs. Although the identities of some of Jolt Action's staff is public, there are many VDRs whose work with Jolt is not public knowledge.

37.     The RTE demands the certificates of appointment for every VDR associated with Jolt. Certificates of appointment contain additional private information such as the VDR's address and date of birth. We do not publicly share this information about any of our VDRs. Our VDRs would consider our sharing their private information to be a serious breach of trust.

38.     Other than submitting their voter registration forms to the appropriate county registrar, we do not publicly share names or other information about the people who we have helped register to vote.

39.     If we were forced to provide confidential information about our VDRs to the Attorney General, we fear that he would target our VDRs for baseless intimidation and harassment, as he has done with others.

40.     Similarly, if we were forced to disclose the identities of people who we have successfully helped register to vote, we fear that the Attorney General would try to intimidate or scare them and try to deter them from exercising their right to

vote. People who fill out a voter registration form at one of our booths are entrusting us to faithfully deposit their form with the county registrar.

41. Moreover, if we were forced to disclose voters' personally identifying information, we would be betraying the trust that we have carefully earned from the Texas Latino community. Our partners would likely not want to work with us as closely, and it would jeopardize our collaboration with other groups, including donors.

42. Although they have done nothing wrong, people associated with Jolt have every reason to fear the Attorney General's scrutiny. He may go after their friends or family members or try to interfere with their employment. Simply being forced to answer questions or having law enforcement come to your home is intimidating, when all you are trying to do is vote or help others do so.

43. One reason Jolt does its work to increase political power in the community is that many Texans fear reprisal if they are vocal on controversial matters. This concern is especially acute in the Latino community. Many Latinos have friends or family members who are undocumented, and they fear that if they draw attention to themselves, they may place their friends or family at risk. Other Latinos may be going through the process of becoming a citizen, and worry that if they criticize the government or take a controversial stand, they will jeopardize their immigration status.

44. Jolt is particularly concerned about public disclosure of personal identifying information about its employee and volunteer VDRs, as well as personal

identifying information about the voters those VDRs help to register.  Such disclosure may subject those people to threats, harassing communications, or even place them at risk of violence from extremists who believe the Attorney General's false accusations that organizations like ours are helping ineligible people register to vote.

45.     In fact, after the Attorney General's announcement targeting Jolt, some of our partners have been less willing to collaborate with us publicly.  Despite the RTE, we continue to do our voter registration work every day.  But the number of voters who our VDRs have registered has declined noticeably.  If we were to provide confidential information to the Attorney General, we would struggle to have productive relationships with other voter engagement groups, and the number of voters and VDRs willing to associate with us would likely drop dramatically.

I declare under penalty of perjury that this declaration is true and correct.

Executed on September 13, 2024.

Jacqueline Bastard

Docusign Envelope ID: 560D014D-DFB6-4940-9410-244E7A3B2B5D

# EXHIBIT A

## TO THE DECLARATION OF JACQUELINE BASTARD

Docusign Envelope ID: 560B014D-DFB6-4940-9410-244F7A3B2B5D
8/28/24, 5:54 PM                                    Jolt Mail - URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work



Jackie Bastard <jackie@jolttx.org>

---

## URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work

**Team Jolt** <development@jolttx.org>                                    Fri, Aug 23, 2024 at 10:00 AM
Reply-To: development@jolttx.org
To: Jacqueline Bastard <jackie@jolttx.org>



Jacqueline --

In an unsurprising move to suppress voter registration, Texas Attorney General Ken Paxton has attacked Texans once again. **Who this time?** Texas nonprofits including Volunteer Deputy Registrars registering people to vote. As shameless as this is, it's not surprising that the Texas Attorney General is doubling down on voter suppression months ahead of the upcoming November election.

Paxton's office claims it opened this investigation because "organizations operating in Texas may be unlawfully registering noncitizens to vote." This is baseless: a 2016 study shows that "of 23.5 million votes cast, election officials only found about 30 cases of potential noncitizen voting that they referred for prosecution or further investigation."

**That's .001% out of all votes!**

**Here's what we know:**

- Only U.S. citizens can vote in federal elections. Noncitizen voting is rare (Paxton's Election Integrity Unit had a **$2.3 million** expenditure in last year and prosecuted only **4 cases**)
- All Volunteer Deputy Registrars are required to undergo county-specific training designated by the Texas Secretary of State and comply with Texas Election Code when conducting registration efforts. Eligibility is ultimately determined by County Elections offices and the Secretary of State; not Volunteer Deputy Registrars.
- **Yesterday, DMV site managers in San Antonio, Houston, and Dallas felt they were no longer comfortable having organizations like Jolt conducting voter registration efforts on site.** This decision resulted in agreements with site managers coming to an end after being stationed at most sites for over a year.

Latinos are the majority in Texas and represent the biggest threat to the political status quo. Republicans, including Attorney General Ken Paxton, understand that the only way for them to stay in power is by disenfranchising voters. **But at Jolt Action, we won't stay quiet, and we are prepared to make our voices heard to ensure voting rights aren't infringed upon.** We're committed to working through this election and beyond to continue protecting the rights of our community, ensure that every eligible Texan is registered to vote, and that they exercise that right to vote at the ballot box!

**Stand with Jolt now by rushing a donation to support our Organizers.**

Docusign Envelope ID: 560B014D-DFB6-4940-9410-244E7A3B2B5D

We'll keep you updated on this emerging situation.

*Team Jolt*

Jolt Action
P.O. Box 4185
Austin, TX 78765
https://jolttx.org/

If you believe you received this message in error or wish to no longer receive email from us, please
unsubscribe.

Docusign Envelope ID: 560D014D-DFB6-4940-9410-244E7A3B2B5D

# EXHIBIT B

## TO THE DECLARATION OF JACQUELINE BASTARD



### OFFICE OF THE ATTORNEY GENERAL
### CONSUMER PROTECTION DIVISION

## REQUEST TO EXAMINE

To:    Jolt Initiative, Incorporated
P.O. Box 4185
Austin, Texas 78765
c/o Gloria Gonzalez-Dholakia    ***Via Process Server***
Registered Agent
10304 James Ryan Way
Austin, Texas 78730

Jolt Initiative, Incorporated    ***Via Process Server***
c/o Board Vice Chair Daniela Rubio
7106 Geneva Drive
Austin, Texas 78723

Re:    The Office of the Attorney General's Examination of Jolt Initiative, Incorporated

The Office of the Attorney General, as the representative of the public's interest, has authority to examine any record of a filing entity or foreign filing entity within the meaning of the Texas Business Organizations Code. Tex. Bus. Org. Code § 12.151. Such examination of records may be undertaken in accordance with an investigation under Texas Business Organizations Code Section 12.153 to determine whether a Texas-registered entity's conduct violates its governing documents or any laws of this state.

Jolt Initiative, Incorporated ("Jolt") is a filing entity within the meaning of the Texas Business Organizations Code. Pursuant to this office's specific authority under Texas law, including Texas Business Organizations Code Section 12.151, *et seq.*, the Office of the Attorney General is issuing this Request to Examine (RTE) instructing that Jolt permit the Office of the Attorney General to examine and make copies of or otherwise produce the records set forth in Attachment "A." You are to make available the records described in Attachment "A" to the undersigned Assistant Attorney General or other authorized agent(s). The records may be sent electronically or by certified mail to the Office of the Attorney General, 300 W. 15th. Street, 9th Floor, Austin, TX 78701, and are due on **September 19, 2024**. If providing records electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

Please contact one of the persons listed below upon receipt to discuss the logistics of producing the requested documents to the Office of the Attorney General.

## NOTICE OF RIGHTS AND PENALTIES

**TAKE NOTICE THAT** you are encouraged to meet and confer with the Office of the Attorney General if you contend that any of the information sought in Exhibit A is constitutionally protected or otherwise legally exempt from production to the Office of the Attorney General.

If you cannot reach agreement with the Office of the Attorney General on the scope of documents sought, you may attempt to obtain judicial review of the RTE before **September 19, 2024** through a "suit for a declaratory judgment," *Humble Oil & Refining Company v. Daniel* 259 S.W.2d 580, 588 (Tex.App.—Beaumont 1953) (writ ref'd N.R.E.), or a suit for injunctive relief, *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007).

In such a suit, the Office of the Attorney General will not dispute the availability of judicial review.

**TAKE FURTHER NOTICE THAT** penalties for a legally unexcused failure or refusal to timely produce records for the Attorney General's examination include the Office of the Attorney General initiating a legal action for the entity's "registration or certificate of formation" to "be revoked or terminated." Tex. Bus. Org. Code § 12.155. If the Office of the Attorney General deems such penalty warranted, proceedings to revoke or terminate an entity's registration or certificate of formation are initiated through a petition for leave to file an information in the nature of quo warranto. Tex. Civ. Prac. & Rem. Code § 66.002. In such a proceeding, the registered entity is "entitled to" the same rights "as in cases of trial in civil cases." Tex. R. Civ. P. 781.

ISSUED THIS 30th day of August 2024.

*/s/ David Shatto*
DAVID SHATTO
Assistant Attorney General
Consumer Protection Division, OAG
T: (512) 475.4656 | F: (512) 370.9125
David.Shatto@oag.texas.gov

Other Authorized Agents:
Rozanne Lopez, Investigator
Consumer Protection Division, OAG
T: (210) 284.5295
Rozanna.Lopez@oag.texas.gov

# ATTACHMENT "A"

## Instructions

1.    **Read These Instructions/Definitions Carefully.** Your production must comply with these instructions and definitions.

2.    **Duty to Preserve Documents.** All documents and/or other data which relate to the subject matter or requests of this RTE must be preserved. *Any ongoing, scheduled, or other process of document or data destruction involving such documents or data must cease even if it is your normal or routine course of business for you to delete or destroy such documents or data and even if you believe such documents or data are protected from discovery by privilege or otherwise.* Failure to preserve such documents or data may result in legal action and may be regarded as spoliation of evidence under applicable law.

3.    **Relevant Dates.** <u>Unless otherwise noted</u>, the requests in this RTE require production of documents from June 1, 2024, to the date of the production of documents in response to this RTE, herein called "the relevant time period."

4.    **Custody and Control.** In responding to this RTE, you are required to produce not only all requested documents in your physical possession, but also all requested documents within your custody and control. A document is in your custody and control if it is in the possession of another person and you have a right to possess that document that is equal or superior to that other person's right of possession. On the rare occasion that you cannot obtain the document, you must provide an explanation as to why you cannot obtain the document which includes the following information:

   a.  the name of each author, sender, creator, and initiator of such document;

   b.  the name of each recipient, addressee, or party for whom such document was intended;

   c.  the date the document was created;

   d.  the date(s) the document was in use;

   e.  a detailed description of the content of the document;

   f.  the reason it is no longer in your possession, custody, or control; and

   g.  the document's present whereabouts.

If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the destruction or disposal.

5.    **Non-identical Copies to be Produced.** Any copy of a document that differs in any manner, including the presence of handwritten notations, different senders or recipients, etc. must be produced.

6.    **Redaction.** All unprivileged materials or documents produced in response to this RTE

shall be produced in complete unabridged, unedited, and unredacted form, even if portions may contain information not explicitly requested, or might include interim or final editions of a document. Privileged information must be handled in accordance with Instruction Number 9, below.

7.    **Document Organization.**  Each document and other tangible thing produced shall be clearly designated as to which request, and each sub-part of a request, that it satisfies. The documents produced shall be identified and segregated to correspond with the number and subsection of the request.

8.    **Production of Documents.**    You may submit photocopies (with color photocopies where necessary to interpret the document) in lieu of original hard-copy documents if the photocopies provided are true, correct, and complete copies of the original documents. If the requested information is electronically stored information, it shall be produced in electronic form. Electronically stored information shall be produced with the accompanying metadata, codes, and programs necessary for translating it into usable form, or the information shall be produced in a finished usable form.   For any questions related to the production of documents you may consult with the Office of the Attorney General representatives above.

9.    **Privilege Log.**   For each Document and any other requested information that you assert is privileged or for any other reason excludable from production, please provide a privilege log, wherein you:

    a.  Identify that Document and other requested information;

    b.  State each specific ground for the claim of privilege or other ground for exclusion and the facts supporting each claim of privilege or other ground for exclusion;

    c.  State the date of the Document or other requested information; the name, job title, and address (including city, state and ZIP Code) of the person who prepared it; the name, address (including city, state, and ZIP Code), and job title of the person to whom it was addressed or circulated or who saw it; and the name, job title, and address (including city, state, and ZIP Code) of the person now in possession of it; and

    d.  Describe the type and subject matter of the Document or other requested information.

# Definitions

1.      **"You," "your," "Jolt"** means Jolt Initiative, Inc., their past and present officers, employees, agents and representatives, parents and predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and includes all persons and entities acting or purporting to act under the guidance or on behalf of any of the above.  The terms "subsidiary," "affiliate," and "joint venture" refer to any firm in which there is total or partial ownership (25 percent or more) or control between the company and any other person or entity.

2.      The words **"and"** and **"or"** shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of the request, any document(s) that might be deemed outside its scope by another construction.

3.      "**Concerning**" or "**Relating to**" or "**Related to**" means related to, referring to, pertaining to, concerning, describing, regarding, evidencing, or constituting.

4.      **"Document"** shall be construed in the broadest sense possible and encompasses any electronically stored information, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by Spirit into a reasonably usable form. Although it does not limit the scope of this RTE, the definition and interpretation of "document" under the Texas Rules of Civil Procedure provides a useful reference point.

5.   **"Entity"** means legal or business entity of any kind and includes, without limitation, corporations, partnerships, joint ventures, associations, governmental bodies, and trusts.

6.   **"Including"** means including, but not limited to.

7.   **"Person"** means any natural person or any legal entity, including, without limitation, any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or firm.

## Documents to be Produced

In accordance with the requirements set forth in the "Definitions" and "Instructions" sections of this RTE, you are specifically instructed to produce the following:

**By September 19, 2024:**

1. Each of Your volunteer deputy registrars' certificates of appointment.

2. All Documents Jolt provides to your volunteer deputy registrars Concerning the voter registration application process.

3. All Documents Jolt provides to your volunteer deputy registrars Concerning Your role in the voter registration application process.

4. Each of the completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by You.